IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DESMOND DAVIS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:12-CV-3599-N |
| | § | |
| THE BANK OF NEW YORK MELLON | § | |
| F/K/A THE BANK OF NEW YORK AS | § | |
| TRUSTEE FOR THE | § | |
| CERTIFICATEHOLDERS OF CWABS, | § | |
| INC. ASSET-BACKED CERTIFICATES | § | |
| SERIES 2005-3 AND BANK OF | § | |
| AMERICA N.A., | § | |
| | § | |
| Defendants. | § | |

# **ORDER**

This Order addresses Defendants The Bank of New York Mellon f/k/a The Bank of New York as Trustee for the Certificateholders of CWABS, Inc. Asset-Backed Certificates Series 2005-3 ("BNYM") and Bank of America N.A.'s ("BANA" and, collectively with BNYM, the "Banks") motion for summary judgment [Doc. 10]. The Court grants the motion.

### **I. THE PARTIES' DISPUTE OVER DAVIS'S MORTGAGE**

This case is about the mortgage on Plaintiff Desmond Davis's home (the "Property"). Davis obtained a mortgage on the Property in March 2005 from America's Wholesale Lender ("AWL"). At that time, he executed a note payable to AWL (the "Note") and a deed of trust

(the "Deed") encumbering the Property and securing payment of the Note. The Deed names Mortgage Electronic Registration Systems, Inc. ("MERS") as the Deed's beneficiary.

MERS later filed an assignment that purported to transfer both the Deed and the Note to BNYM (the "Assignment"). *See* Defs.' App. Supp. Mot. Summ. J. [hereinafter Defs.' App.], Ex. D [11-4], at 1. BNYM is the trustee for a trust called the Certificateholders of CWABS, Inc. Asset-Backed Certificates Series 2005-3 (the "Trust"). The assignment transfers the Deed to BNYM in its capacity as trustee. BANA is the mortgage servicer of Davis's mortgage.

Davis defaulted on his mortgage, making his last payment in 2010. BANA accordingly commenced the foreclosure process pursuant to the terms of the Deed. Davis filed this action in Texas state court before BANA could conclude the foreclosure proceedings. He seeks to quiet title to the Property and asks for declaratory and injunctive relief regarding the parties' rights in the Property. Davis's claims are based on the contention that, for one reason or another, the Assignment was invalid and that BNYM therefore lacks the power to foreclose on the Property. Defendants removed the case to this Court and now move for summary judgment.

## II. STANDARD OF REVIEW FOR MOTIONS FOR SUMMARY JUDGMENT

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, courts must view all evidence and draw all reasonable inferences in the

light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, "he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to summary judgment either by (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322–25. Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact so that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Moreover, "[c]onclusory allegations, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). Indeed, factual controversies are resolved in favor of the nonmoving party "'only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts.'" *Olabisiomotosho v. City of Hous.*, 185 F.3d 521, 525 (5th Cir. 1999) (quoting *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

### III. DAVIS'S UNDERLYING THEORIES LACK MERIT

Davis asserts that the transfer of his mortgage from MERS to BNYM was faulty for two reasons. His first argument is based on the terms contained in the Trust's governing document. The Assignment purports to transfer both Note and Deed to BYNM as trustee for the Trust. The Trust is governed by a pooling and service agreement (the "PSA"). According to the PSA, the Trust could acquire loans only on or before March 30, 2005. Pl.'s App. 41 [14-8]. Moreover, the PSA contains certain requirements regarding the method by which the Trust was to acquire assets. *Id.*, at 56–57 [15-1]. The Trust's acquisition of Davis's mortgage was contrary to the PSA in two respects: (1) it occurred in 2011, and (2) certain aspects of the Trust's acquisition of Davis's mortgage do not comport with the requirements spelled out in the PSA. Davis's second argument is that the Assignment did not transfer the Note because notes cannot be negotiated via assignments. Accordingly, Davis maintains that BNYM never validly held the Note and that it never had the authority to foreclose. He concludes that, because BNYM lacked such authority, BANA did as well. These arguments, however, fail for the reasons explained below.

#### *A. Davis Has Standing to Challenge the Assignment Only on Grounds That Would Make the Assignment Void*

The Banks argue, first, that Davis lacks standing to challenge the Assignment because he was not a party to it. Courts in this District have disagreed about the merits of this argument, but the Fifth Circuit has recently settled the dispute:

> Though "the law is settled" in Texas that an obligor cannot defend against an assignee's efforts to enforce the obligation on a ground that merely renders the assignment voidable at the election of the assignor, Texas courts follow the majority rule that the obligor may defend "on any ground which renders the assignment void."

ORDER – PAGE 4

*Reinagel v. Deutsche Bank Nat'l Trust Co.*, No. 12-50569, 2013 WL 3480207, at *3 (5th Cir. July 11, 2013) (quoting *Tri-Cities Constr., Inc. v. Am. Nat'l Ins. Co.*, 523 S.W.2d 426, 430 (Tex. Civ. App. – Houston [1st Dist.] 1975)).  Davis asserts that all of his challenges to the Assignment would render it void.  A closer examination of governing law, however, demonstrates otherwise.

***1. Davis May Not Assert a Claim Based on* Ultra Vires *Actions by the Trust.*** – The PSA provides that the Trust is to be governed by New York law.  *See* Pl.'s App. Resp. Mot. Summ. J. 107 [15-4].  As Davis notes, there is a statute in New York providing that "every sale, conveyance, or other act of the trustee in contravention of the trust, except as authorized by this article or by other provision of law, is void."  N.Y. EST. POWERS & TRUSTS LAW § 7-2.4.  The Court, however, concludes that, even though the Trust may have acted outside the bounds of the PSA, these actions cannot make the Assignment void, at least as that term is understood in Texas.

Section 7-2.4 "is not applied literally in New York."  *Calderon v. Bank of Am., N.A.*, No. SA:12-CV-00121-DAE, 2013 WL 1741951, at *11 (W.D. Tex. Apr. 23, 2013) (quoting *Bank of Am. Nat'l Ass'n v. Bassman FBT, LLC*, 981 N.E.2d 1, 9 (Ill. App. Ct. 2012)).  Rather, New York case law repeatedly states that *ultra vires* trust actions may be ratified or consented to by the trust's beneficiaries.  *See id.*; *see also* 106 N.Y. JUR. 2D TRUSTS § 431 ("[T]rustee may bind trust to an otherwise invalid act or agreement which is outside the scope of the trustee's power when beneficiary consents to or ratifies the trustee's ultra vires act or agreement.").  If an act may be ratified, it is voidable, not void.  *See Hacket v. Hacket*, No. 3338/2008, 2012 WL 669525, at *20 (N.Y. Sup. Ct. Feb. 21, 2012) (citing 27 WILLISTON ON

ORDER – PAGE 5

CONTRACTS § 70:13 [4th ed.])); *see also* 17 C.J.S. CONTRACTS § 4 (noting that a void contract "is no contract whatsoever" and "cannot be validated by ratification").  Because a trustee's actions may be ratified, *ultra vires* actions are not, in fact, void.  *See Cimmering v. Merril Lynch Mortg. Investors, Inc.*, No. 8727/2011, 2012 2332358, at *11 (N.Y. Sup. Ct. June 13, 2012); *accord Sigaran v. U.S. Bank Nat'l Ass'n*, No. H-12-3588, 2013 WL 2368336, at *3 (S.D. Tex. May 29, 2013); *Keyes v. Deutsche Bank Nat'l Trust Co.*, No. 12-11619, 2013 WL 440191, at *8 (E.D. Mich. Feb. 5, 2013).  Thus, even if the Trust acquired the Note and Deed after the closing date and in a manner not allowed by the PSA, the Assignment would be, at most, voidable.  In Texas, "'the obligors of a claim . . . may not defend [against an assignee's effort to enforce the obligation] on any ground which renders the assignment voidable only.'"  *Reinagel*, 2013 WL 3480207, at *4 (quoting *Tri-Cities Constr.*, 523 S.W.2d at 430) (alterations in original).  Davis thus lacks standing to challenge the Assignment on the ground that the Trust acted contrary to the PSA.

     ***2. Davis May Assert That the Assignment Did Not Negotiate the Note.*** – Davis also contends that the Assignment did not validly transfer the Note to BNYM because, as a general matter, an assignment is not a proper method for negotiating a note.  If Davis were to succeed on this claim, the purported assignment of the Note would be void *ab initio*.  Davis thus has standing to challenge the Assignment on this ground.

     **B.  BNYM Does Not Need to Possess the Note**

     The issue of the transfer of the Note matters only if BNYM needs to hold the Note to foreclose.  The Fifth Circuit has determined that, under Texas law, a party need not possess a note to foreclose under a corresponding deed of trust.  *See Martins v. BAC Home Loans*

*Servicing, L.P.*, No. 12-20559, 2013 WL 3213633, at *1–4 (5th Cir. June 26, 2013) (observing that note and lien are separate obligations, that deed of trust gives power of sale to both lender and to beneficiary, and that "[t]he party to foreclose need not possess the note itself"); *see also Casterline v. OneWest Bank, F.S.B.*, No. 13-40067, 2013 WL 3868011, at *2 (5th Cir. July 3, 2013) (unpub.) (per curiam) (affirming grant of summary judgment where parties disagreed about whether note had been assigned and rejecting argument that "splitting the Security Instrument from the underlying Note, and separately assigning them, rendered the mortgage unenforceable"); *Helms v. Mortg. Elec. Registration Sys., Inc.*, No. H-11-3298, 2012 WL 43368, at *2 (S.D.Tex. Jan. 9, 2012) ("[E]ven if the note and the deed of trust became somehow separated, that does not affect the rights of the lien-creditor to foreclose based on the deed of trust."). Thus, the question of whether or not the note was properly negotiated to BNYM is not relevant to BNYM's – and consequently BANA's – standing to foreclose on the Property.

### *C. The Note Is Indorsed in Blank*

Even if the Court were to consider the Note necessary to BNYM and BANA's power to foreclose, the Court would conclude that the Note was properly transferred. The Note bears an indorsement in blank from AWL. *See* Def.'s App., Ex. B [11-2], at 3 (containing indorsement signed by managing director of "Countrywide Home Loans, Inc., a New York Corporation Doing Business as America's Wholesale Lender"). Under Texas law, an instrument is indorsed in blank if, as here, it does not identify a person to whom the indorsement makes the instrument payable. *See* TEX. BUS. & COM. CODE § 3.205(a). "When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by

ORDER – PAGE 7

transfer of possession alone until specially indorsed." *Id.* § 3.205(b). These rules, as the Fifth Circuit has observed in an unpublished opinion, apply to notes secured by mortgages. *See Kiggundu v. Mortg. Elec. Registration Sys. Inc.*, 469 F. App'x 330, 331–32 (5th Cir. 2012), *cert. denied*, 133 S. Ct. 210 (2012) ("Because the note was endorsed in blank and the Bank of New York was in possession of the note, under Texas law, the Bank of New York was entitled to collect on it."). AWL's indorsement in blank, then, made the Note payable to the person bearing it: in this case, BNYM.

### IV. DAVIS'S CLAIMS FAIL TO SURVIVE SUMMARY JUDGMENT

#### A. *Quiet Title*

The principal issue in a quiet title action is "the existence of a cloud that equity will remove." *Metcalf v. Deutsche Bank Nat. Trust Co.*, No. 3:11-CV-3014-D, 2012 WL 2399369, at *6 (N.D. Tex. June 26, 2012) (quoting *Bell v. Ott*, 606 S.W.2d 942, 952 (Tex. Civ. App. – Waco 1980, writ ref'd n.r.e.)). "A cloud on title exists when an outstanding claim or encumbrance is shown, which on its face, if valid, would affect or impair the title of the owner of the property." *Gordon v. W. Hous. Trees, Ltd.*, 352 S.W.3d 32, 42 (Tex. App. – Houston [1st Dist.] 2011, no pet.). If a plaintiff prevails in a quiet title action, the Court declares invalid or ineffective the defendant's claim to title. *Id.* A plaintiff in a quiet title suit must prove that (1) he has an interest in a specific property, (2) title to the property is affected by a claim by the defendant or defendants, and (3) the claim, although facially valid, is invalid or unenforceable. *Bell v. Bank of Am. Home Loan Servicing LP*, No. 4:11-cv-02085, 2012 WL 568755, at *7 (S.D. Tex. Feb. 21, 2012) (citing *U.S. Nat'l Bank Ass'n v. Johnson*, No. 01-10-00837-CV, 2011 WL 6938507, at *3 (Tex. App. – Houston [1st Dist.]

Dec. 30, 2011, no pet.) (mem. op.)).  In a quiet title action, a plaintiff can recover only on the strength of his or her own title, not the weakness of any defendant's title.  *Fricks v. Hancock*, 45 S.W.3d 322, 327 (Tex. App. – Corpus Christi 2001, no pet.) (citing *Alkas v. United Sav. Ass'n of Tex., Inc.*, 672 S.W.2d 852, 857 (Tex. App. – Corpus Christi 1984, writ ref'd n.r.e.)).

Davis points to no evidence of a claim to the Property that is facially valid but in fact invalid or unenforceable.  As explained above, Davis's arguments as to why BNYM's interest is invalid are flawed.  BNYM has the authority to enforce its claim through foreclosure pursuant to the Deed.  The Banks, then, are entitled to summary judgment on Davis's quiet title claim.

### B.  *Declaratory and Injunctive Relief*

The Declaratory Judgment Act ("DJA")[1] is a procedural mechanism: it creates no substantive rights.  *Lowe v. Ingalls Shipbldg.*, 723 F.2d 1173, 1179 (5th Cir. 1984); *see Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239–41 (1937).  "Thus, the Act provides no relief unless there is a justiciable controversy between the parties."  *Kazmi v. BAC Home Loans Servicing, L.P.*, No. 4:11-CV-375, 2012 WL 629440, at *15 (E.D. Tex. Feb. 3, 2012); *see Turner v. AmericaHomeKey Inc.*, No. 3:11-CV-0860-D, 2011 WL 3606688, at *5 (N.D. Tex. Aug. 16, 2011) (explaining that DJA is "merely a vehicle that allows a party to obtain an early adjudication of an actual controversy arising under other substantive law").  Because the Court grants summary judgment to the Banks on Davis's underlying cause of action, no

---

[1] Removal from state to federal court, in effect, converts a state court declaratory judgment action into one under the DJA.  *See, e.g.*, *Turner v. AmericaHomeKey, Inc.*, No. 3:11-CV-0860-D, 2011 WL 3606688, at *5 n.11 (N.D. Tex. Aug. 16, 2011); *Morrice Logistics, Ltd. v. Intransit Inc.*, No. EP-10-CV-417-KC, 2011 WL 1327397, at *4 n.1 (W.D. Tex. Apr. 5, 2011).

ORDER – PAGE 9

actual controversy between the parties regarding any of these claims remains. The Banks are therefore entitled to summary judgment on this claim as well.

To prevail on a claim for injunctive relief in federal court, a plaintiff must show, among other things, "a substantial likelihood of success on the merits." *DSC Comm. Corp. v. DGI Techs, Inc.*, 81 F.3d 597, 600 (5th Cir. 1996). Because no justiciable controversy remains between Davis and the Banks, Davis cannot succeed on the merits of any of his claims. He is thus not entitled to injunctive relief, and the Court grants summary judgment to the Banks on this claim, too.[2]

## CONCLUSION

For the reasons set out above, the Court grants the Banks' motion and awards them summary judgment.

Signed August 21, 2013.

_____
David C. Godbey
United States District Judge

---

[2]The Banks also seek summary judgment on a claim under the Texas Debt Collection Act. To the extent Davis has asserted such a claim, he has not responded to the Banks' arguments regarding it. The Court accordingly deems him to have waived this claim. *See Hinojosa v. Tarrant Cnty., Tex.*, No. 4:08-CV-315-A, 2009 WL 1309218, at *10 (N.D. Tex. May 5, 2009) (deeming claim waived under similar circumstances), *aff'd sub nom. Cook v. Tarrant Cnty., Tex.*, 372 F. App'x 493 (5th Cir. 2010) (unpub.).

ORDER – PAGE 10